**KALIELGOLD PLLC**
Sophia Goren Gold (SBN 307971)
Jeffrey D. Kaliel (SBN 238293)
Amanda J. Rosenberg (SBN 278507)
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com
jkaliel@kalielpllc.com
arosenberg@kalielgold.com

*Attorneys for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA MYERS and MARYHESPER SANTOS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CYBERSOFT TECHNOLOGY, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Patricia Myers and MaryHesper Santos ("Plaintiffs"), on behalf of the putative Class, by their undersigned counsel, and for their Class Action Complaint against Defendant Cybersoft Technology, Inc., allege as follows:

### PRELIMINARY STATEMENT

1. This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Cybersoft Technology, Inc. ("Defendant" or "SchoolCafe"), a credit card payment processing company which owns and operates its SchoolCafe program, which is an account platform used by public schools across the countries to pay for school meals.

2.      Although federal policy specifies that schools must provide a fee-free option for school lunch payment, SchoolCafe deceptively applies a "Convenience Fee" to all transactions for students' school lunches, which is either a flat fee or a percentage of the transaction.

3.      Over the course of a schoolyear, these so called "Convenience Fees" significantly increase a family's total spending on school related costs, and disproportionately impact families with lower incomes. Consumer Financial Protection Bureau, *Supervisory Highlights: Junk Fees Update Special Edition, Issue 31, Fall 2023* (Oct. 2023), https://www.consumerfinance.gov/data-research/research-reports/supervisory-highlights-junk-fees-update-special-edition-issue-31-fall-2023/, at 15.

4.      School lunch payment processors typically charge fees to add money to a student's school lunch account, which collectively can cost families upwards of $100 million each year. Ex. A, p. 4. Consumers cannot choose their payment platform. Because contracts are determined at a school-district level, families have no choice over which company they must use to add funds into online student lunch accounts. As a result, it is especially difficult for low-income families to avoid these harmful practices, including those that violate federal consumer protection law. *Id*. at 5.

5.      SchoolCafe's flat fee model specifically disproportionately affects low-income families. The flat fee is the same, regardless of whether the student receives free or reduced price lunches. Additionally, flat transaction fees are also much more expensive for users who make small deposits more frequently, compared to those who can afford to deposit more money less frequently.

6.      Worse yet, on information and belief, throughout the entirety of the sign-up process for school lunches, SchoolCafe fails to inform consumers that a fee will be charged.  Reasonable consumers like Plaintiffs proceed through check out without ever becoming aware of any additional fees assessed by Defendant.

CLASS ACTION COMPLAINT

7.    Then, at checkout, and only after consumers have completed a comprehensive sign-up process, SchoolCafe surreptitiously imposes its so called "Convenience Fee." The Convenience Fee is added at the very end of the registration process in order to ensure it is unseen by consumers like Plaintiffs.

8.    Defendant does everything it can to hide the extra fee on its checkout pages. Many times, this works: consumers do not even notice that the total amount they are being charged for the order has increased at this late stage.

9.    Moreover, even consumers who notice the extra fee often still go through with the purchase. Having put in all their information – their child's student ID, allergy information, lunch preferences, and so forth – consumers do not want to start over and research whether there may be another way to pay for the school lunches without incurring the fee. And, in violation of federal law, SchoolCafe makes it entirely unclear whether there is another way to pay for the students' lunches and avoid the "Convenience Fee".

10.    Either way, the result is the same. Defendant's deceptive late added Convenience Fee did its job and consumers purchase from Defendant. As a result, Defendant profits.

11.    This practice has been going on for years. It has made Defendant and its unscrupulous owners major players in the payment processing industry, earning hundreds of millions of dollars per year from unsuspecting consumers.

12.    It is false and deceptive for Defendant to surreptitiously add a "Convenience Fee" at the end of the enrollment process, especially where it offers no explanation of the Convenience Fee at any time during the enrollment or checkout process. On information and belief, the "Convenience Fee" is only added without comment or description as a line item just before a purchase is completed after a multi-step process without any mention of the fee.

CLASS ACTION COMPLAINT

13.     Worse, the Convenience Fee itself is a sham, a classic "junk fee." The "online processing" provided by SchoolCafe, which is signing up for school lunches, is the entire service that SchoolCafe provides—and it is a service that the school districts have already contracted for and are already paying Defendant for. The Convenience Fee is merely a second payment—in the form of a junk fee—for the service that the school district is already paying for.

14.     By hiding the mis-named and deceptive fee at the very last step of the sale, Defendant has raked in millions of dollars in Convenience Fees at the expense of who are unaware that federal law mandates that they have another choice in paying for school lunches.

15.     As a result of Defendant's unfair and deceptive conduct, Plaintiffs and the proposed class have suffered damages. They purchased school lunches in a manner they otherwise may have not, had they not been drawn in by Defendant's deceptive bait-and-switch scheme.

16.     Defendant should not be allowed to profit from this deception. Plaintiffs seek damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay the so-called Convenience Fee.

## PARTIES

17.     Plaintiffs Patricia Myers is a resident and a citizen of Burbank, California.

18.     Plaintiff MaryHesper Santos is a resident and citizen of Galloway, New Jersey.

19.     Defendant SchoolCafe offers a payment portal for parents to purchase school lunches. It is headquartered in Houston, Texas.

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

CLASS ACTION COMPLAINT

1      a.    the proposed Class is comprised of at least 100 members;
2      § 1332(d)(5)(B)

3      b.    at least one member of the proposed class is a citizen of a State other
4      than California, § 1332(d)(2)(A); and

5      c.    the aggregate claims of the putative class members exceed $5
6      million, exclusive of interest and costs. § 1332(d)(2), (6).

7      21.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because
8   Defendant is subject to personal jurisdiction here and regularly conducts business in
9   this District, and because a substantial part of the events or omissions giving rise to the
10  claims asserted herein occurred in this district.

11                **FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

12      **A.    Overview of School Lunch Payment Programs**

13      22.    As digital payments have become increasingly popular, more and more
14  school districts around the country are offering parents and caregivers the ability to pay
15  school-related expenses, including for field trips, athletics, and school lunches, online.

16      23.    Families can typically access online payment portals through a link on
17  their school district website, or through the company's own webpage or app.
18  Depending on the district, schools may partner with one payment processor for all
19  electronic payments or may have one platform for school meal payments, for example,
20  and another for other school-related payments.

21      24.    School districts contract with third-party payment processing companies
22  with the expectation that they will lower school district processing costs and increase
23  administrative efficiency, accuracy, and security. SchoolCafe is one such third-party
24  payment processing company.

25      **B.    Federal Law Prohibits Charging Additional Fees on School Lunches**

26      25.    The U.S. Department of Agriculture (USDA) has long established that
27  children participating in school nutrition programs "shall not be charged any additional

28                                    5

fees" for the services provided in conjunction with the delivery of school lunch benefits because "by charging fees in addition to the regular reduced price or paid meal charge, a school is limiting access to the program and imposing an additional criterion for participation." FNS Instruction 782-6 Rev. 1, Fees for Lunchroom Services (U.S.D.A. 2010), https://www.fns.usda.gov/cn/fees-lunchroom-services.

26.     While federal law allows for the use of online payment systems, it provides that schools must also provide other payment options like payment by cash or check. U.S. Department of Agriculture, Food and Nutrition Service, *Memo SP23-2017: Unpaid Meal Charges: Guidance and Q&A*, (March 23, 2017), https://www.fns.usda.gov/cn/unpaid-meal-charges-guidance-qas.

27.     While USDA guidance requires that families are notified about available payment methods and associated fees, many school districts do not publish information related to fees on their websites. *Id.*

28.     The USDA has a policy explicitly allowing school districts to cover transaction fees on families' behalf using the funds in their nonprofit school food service account. USDA policy memoranda. *See* U.S. Department of Agriculture, Food and Nutrition Service, *Memo SP02-2015: Online Fees in the School Meal Programs*, (Oct. 8, 2014), https://www.fns.usda.gov/cn/online-fees-school-meal-programs; U.S. Department of Agriculture, Food and Nutrition Service, *Memo SP23-2017: Unpaid Meal Charges: Guidance and Q&A*, (March 23, 2017), https://www.fns.usda.gov/cn/unpaid-meal-charges-guidance-qas. However, the vast majority of school districts pass this fee on to consumers. Ex. A, p. 12.

**C.     SchoolCafe's Convenience Fee Scheme**

29.     The contract between SchoolCafe and the school district states that a Convenience Fee will apply to all purchases for school lunches made on SchoolCafe's website. The school district can elect either a flat transaction fee ranging from $1.95-$2.95 or a percentage fee, which can be as high as 5% of the transaction.

30.    However, as public schools struggle with already low funding, these transaction fees are more commonly paid in part or full by families themselves. Ex. A, p. 12. SchoolCafe knows that most public schools pass this fee on to families and elects to take advantage of unsuspecting low income families.

31.    The so-called Convenience Fee is not disclosed throughout the school lunch registration process. In fact, on information and belief, SchoolCafe does not disclose the Convenience Fee until the very last step in the purchase – after the consumer has already gone through several steps to commit to the purchase of school lunches.

32.    To make matters worse, even at the point of purchase, SchoolCafe still does not disclose the purpose of the Convenience Fee. That is, of course, because the Convenience Fee has no real purpose, and is not actually a fee for any service, where the school district itself is paying for use of SchoolCafe software. Instead, the Convenience Fee is a pure profit-generator.

33.    Thus, by the time consumers are confronted with a total price that includes the added Convenience Fee, consumers have already taken several steps to commit to the transaction including creating account, inputting personal information about their children, inputting lunch and allergy specifications, and deciding how much money to deposit into the child's account.

34.    Worse yet, SchoolCafe further abuses its discretion by granting itself the ability set the Convenience Fee "solely at the discretion of SchoolCafe and can be changed at any time without notice." *See* SchoolCafe, Terms of Service, (accessed Aug. 2024), https://www.schoolcafe.com/.

35.    The "Convenience Fee" is never reasonably disclosed to consumers until it shows up as a line item in their shopping cart—after the purchase process is largely complete. This process fails to provide an adequate advance warning to customers that a Convenience Fee will be imposed on their purchases.

36.     Many consumers do not notice that a Convenience Fee is being added to their order. Others believe that they have no choice but to pay this Convenience Fee, even though federal law mandates that consumers are given another way, without fees, to pay for school lunches. And others still notice the previously undisclosed Convenience Fee, but decide to go through with the purchase anyway: they have already invested substantial time and effort inputting their information into the Defendant's system. So, it doesn't make sense to start over and research whether there may be some other way to pay, or perhaps face the obstacles in front of many low-income families involving transportation to a physical office to pay. So, there is no incentive to reverse course and attempt another way to pay —there is only an incentive to pay the Convenience Fee, be done with it, and avoid the burden of finding another way to pay. The deceptive checkout practice has done its job and diverted the sale to Defendant.

37.     In any of these situations, the result is the same: a consumer who otherwise would have found a way to pay without paying the Convenience Fees, ends up paying the Convenience Fee to Defendant instead. Defendant profits; Plaintiffs and the class lose profits.

**D.    <u>The Convenience Fee is a Junk Fee That Violates Federal Guidance</u>**

38.     SchoolCafe's Convenience Fee is precisely the type of "Junk Fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

///

The White House, <u>The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition</u>,    March    5,    2024,    available    at

CLASS ACTION COMPLAINT

1  https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-

2  how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3

3      39.    As the Federal Trade Commission said recently in its effort to combat

4  Junk Fees,

5          [M]any consumers said that sellers often do not advertise the total amount
           they will have to pay, and disclose fees only after they are well into
6          completing the transaction. They also said that sellers often misrepresent
           or do not adequately disclose the nature or purpose of certain fees, leaving
7          consumers wondering what they are paying for or if they are getting
           anything at all for the fee charged.

8

9  Federal Trade Commission, <u>FTC Proposes Rule to Ban Junk Fees – Proposed rule</u>

10 <u>would prohibit hidden and falsely advertised fees</u>, , October 11, 2023, available at

11 https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-

12 junk-fees.

13     40.    In its own effort to combat junk fees, the State of New York recently

14 passed N.Y. Arts & Cult. Aff. Law § 25.07 concerning fees associated with tickets to

15 sports and concerts.  Under that law, "[t]he price of the ticket shall not increase during

16 the purchase process, excluding reasonable fees for the delivery of non-electronic

17 tickets based on the delivery method selected by the purchaser, which shall be disclosed

18 prior to accepting payment therefor." N.Y. Arts & Cult. Aff. Law § 25.07(4).

19 Accordingly, if the consumer selects to purchase a ticket electronically, at the start of

20 the transaction, the total ticket price shall not increase during the period it takes the

21 consumer to purchase the ticket (e.g., finish the online transaction).  The "All-In Price"

22 must be disclosed to the consumer before the consumer selects the ticket for purchase.

23 Similarly, here, the "All-In Price" should have been displayed to the consumer

24 throughout the enrollment process.

25     41.    Just this month, California expanded its Consumer Legal Remedies Act

26 ("CLRA") was amended to make illegal "drip pricing," which involves advertising a

27 price that is less than the actual price that a consumer will have to pay for a good or

28

1  service. California Civil Code Section 1770(a)(29). Under the new California law, it is
2  now illegal to advertise a low price for a product, only for that product to be subject to
3  additional or mandatory fees later.

4    42.    In its 2013 publication ".com Disclosures: How to Make Effective
5  Disclosures in Digital Advertising, the FTC makes clear that when advertising and
6  selling are combined on a website, and the consumer will be completing the transaction
7  online, the disclosures should be provided before the consumer makes the decision to
8  buy – for example, before the consumer "add[s] to shopping cart." See Fed. Trade
9  Comm'n, .com Disclosures: How to Make Effective Disclosures in Digital Advertising
10  at    ii,    14    (Mar.    2013),    available    at
11  https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-
12  online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

13    43.    Defendant violates federal guidance by adding the Convenience Fee as a
14  line item well after the consumer "add[s] to shopping cart", and by failing to disclose
15  the nature of the Convenience Fee and whether consumers are getting any benefit at all
16  from the fee charged. Worse yet, there is no actual "processing" performed where the
17  school district itself pay for SchoolCafe's service.

18    44.    The Convenience Fee provides no additional value to consumers not
19  already paid for by the school district.

20    45.    The Convenience Fee itself is a sham, a classic "junk fee." The
21  convenience provided by SchoolCafe, which is signing up for and managing school
22  lunch payments, is a service that the school districts are already paying Defendant for.
23  There is no additional "convenience" provided to parents or guardians who use the
24  service. The Convenience Fee is merely a second payment—in the form of a junk fee—
25  for the service for which that the school districts are already paying.

26    46.    Consumers are unaware that they have another choice in paying for school
27  lunches under federal law and believe that they *must* use SchoolCafe's service to

28

1   purchase school lunches. SchoolCafe does not share this information with consumers,

2   and thus prohibits parents or guardians from signing up in alternative manners that

3   would allow them to avoid paying the Convenience Fee. Through such agreements,

4   SchoolCafe acquires a captive audience of families who have been made to believe that

5   they have no choice but to use their services.

6       47.    Defendant imposes undisclosed, deceptive, and unfair junk fees on

7   families who are coerced into believing that they have no choice but to pay them. By

8   this conduct, SchoolCafe has engineered a "pay junk fees to play" scheme. Parents

9   believe that their child will not be able to eat a school lunch unless they pay the junk

10   fee unilaterally set by Defendant with zero relationship to the service actually being

11   provided.

12   **E.    Plaintiff Myers' Experience**

13       48.    On or about August 12, 2024, Plaintiff Myers deposited $20 for school

14   lunches into her child's SchoolCafe account.

15       49.    At the time she deposited money into her child's school lunch account,

16   the Convenience Fee was hidden and not displayed until the ordering process was

17   substantially complete. The Convenience Fee amounted to $2.25, increasing the total

18   price to $22.25.

19       50.    Plaintiff Myers did not notice that Defendant had increased the price of

20   the transaction at the last minute.

21       51.    Had Defendant disclosed the Convenience Fee at an earlier time in the

22   enrollment process, disclosed the nature of the Convenience Fee, and disclosed that

23   under federal law Plaintiff Myers has the right to pay for school lunches without

24   incurring fees, Plaintiff Myers may have made a different choice with respect to

25   whether to use SchoolCafe to purchase school lunches.

26   ///

27   ///

28

**F.      Plaintiffs Santos' Experience**

52.      On or about May 31, 2024, Plaintiff Santos deposited $20 for school lunches into her children's SchoolCafe account.

53.      At the time she deposited money into her children's school lunch account, the Convenience Fee was hidden and not displayed until the ordering process was substantially complete. The Convenience Fee amounted to $2.25, increasing the total price to $22.25.

54.      Plaintiff Santos did not notice that Defendant had increased the price of the transaction at the last minute.

55.      Had Defendant disclosed the Convenience Fee at an earlier time in the enrollment process, disclosed the nature of the Convenience Fee, and disclosed that under federal law Plaintiff Santos has the right to pay for school lunches without incurring fees, Plaintiff Santos may have made a different choice with respect to whether to use SchoolCafe to purchase school lunches.

## CLASS ALLEGATIONS

56.      Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements.

> All persons who, during the applicable statute of limitations, were charged a Convenience Fee by Defendant.

57.      Plaintiffs also bring alternative state subclasses on behalf of California and New Jersey residents.

58.      The Nationwide Classes and alternative state subclass defined above are collectively referred to herein as the "Classes." Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

CLASS ACTION COMPLAINT

59.   Excluded from the Classes are Defendant, its consumers, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

60.   The members of the Classes are so numerous that joinder is impractical. The Classes consist of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Defendant's records.

61.   The claims of the representative Plaintiffs are typical of the claims of the Classes he seeks to represent in that the representative Plaintiffs, like all members of the Classes, were charged improper and deceptive fees as alleged herein. The representative Plaintiffs, like all members of the Classes, were damaged by Defendant's misconduct in that they were charged hidden Convenience Fees. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. And Defendant has no unique defenses that would apply to Plaintiffs and not the Classes.

62.   There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

63.   The questions of law and fact common to the Classes include, but are not limited to, the following:

a.    Whether Defendant's assessment of Convenience Fees was unfair, deceptive, or misleading;

b.    Whether Defendant's assessment of Convenience Fees breached the contract;

c.    The proper method or methods by which to measure damages and/or

CLASS ACTION COMPLAINT

restitution and/or disgorgement; and

d.    Whether Plaintiffs and the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

64.    Plaintiffs' claims are typical of the claims of other members of the Classes, in that they arise out of the same wrongful Convenience Fee policies and practices. Plaintiffs have suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Classes.

65.    Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

66.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual member of the Classes' claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no member of the Classes could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the members of the Classes will continue to suffer losses and Defendant's misconduct will proceed without remedy.

67.    Even if members of the Classes themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single

1    court.

2    68.    Plaintiffs know of no difficulty to be encountered in the maintenance of

3    this action that would preclude its treatment as a class action.

4    69.    Defendant has acted or refused to act on grounds generally applicable to

5    each of the Classes, thereby making appropriate final injunctive relief or corresponding

6    declaratory relief with respect to each Classes as a whole.

7    70.    All conditions precedent to bringing this action have been satisfied and/or

8    waived.

9    ## CAUSES OF ACTION

10   ### FIRST CLAIM FOR RELIEF
     **Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
11   **(On Behalf of Plaintiffs and the Class)**

12   71.    Plaintiffs incorporate the preceding allegations by reference as if fully set

13   forth herein.

14   72.    Plaintiffs and Defendant have contracted for school lunch processing

15   services.

16   73.    Defendant mischaracterized in the contract its true fee practices and

17   breached the terms of the contract.

18   74.    Under California law, the covenant of good faith and fair dealing is an

19   implied promise contained in every contract that neither party shall do anything which

20   will have the effect of destroying or injuring the right of the other party to receive the

21   fruits of the contract. Good faith is also mandated by the Uniform Commercial Code

22   ("UCC"), which covers banking transactions.

23   75.    Good faith and fair dealing, in connection with executing contracts and

24   discharging performance and other duties according to their terms, means preserving

25   the spirit—not merely the letter—of the bargain. Put differently, the parties to a

26   contract are mutually obligated to comply with the substance of their contract in

27

28

CLASS ACTION COMPLAINT

1 | addition to its form. Evading the spirit of the bargain and abusing the power to specify
2 | terms constitute examples of bad faith in the performance of contracts.

3 | 76. Subterfuge and evasion violate the obligation of good faith in performance
4 | even when an actor believes their conduct to be justified. A lack of good faith may be
5 | overt or may consist of inaction, and fair dealing may require more than honesty.
6 | Examples of violations of good faith and fair dealing are willful rendering of imperfect
7 | performance, abuse of a power to specify terms, and interference with or failure to
8 | cooperate in the other party's performance.

9 | 77. Defendant has breached the covenant of good faith and fair dealing
10 | through its Convenience Fee policies and practices as alleged herein.

11 | 78. Defendant harms consumers by abusing its contractual discretion in a
12 | number of ways that no reasonable customer could anticipate.

13 | 79. Plaintiffs and members of the Class have performed all, or substantially
14 | all, of the obligations imposed on them by the contract.

15 | 80. Plaintiffs and members of the Class have sustained damages as a result of
16 | Defendant's breach of the contract and breach of the covenant of good faith and fair
17 | dealing.

**SECOND CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On behalf of Plaintiffs and the Class)**

20 | 81. The preceding allegations are incorporated by reference.

21 | 82. To the detriment of Plaintiffs and the Class, Defendant has been, and
22 | continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

23 | 83. Plaintiffs and the Class conferred a benefit on Defendant when they paid
24 | Defendant the Convenience Fee, which they did not agree to and could not reasonably
25 | avoid.

26 | 84. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said
27 | benefits, which under the circumstances, would be unjust to allow Defendant to retain.

28 |

85.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

86.    Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

**THIRD CLAIM FOR RELIEF**
**Violation of the Texas Deceptive Trade Practices**
**(On Behalf of Plaintiffs and the Class)**

87.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

88.    Plaintiffs is a "consumer" as defined in the DTPA.

89.    Defendant violated the following provisions of the DTPA;

a.    §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(7), §17.46(b)(12), §17.46(b)(20), and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs;

b.    §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

90.    Plaintiffs further contends that Defendant's violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA.

91.    This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth herein.

92.    Pursuant to Tex. Bus. & Com. Code § 17.505, Plaintiffs' counsel notified Defendant in writing by certified mail of the particular violations of the DTPA and demanded that it both rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiffs' letter or fails to agree to rectify the problems associated with

17

1  the actions detailed above and give notice to all affected consumers within sixty days
2  of the date of written notice, as proscribed by section 17.505, Plaintiffs will move to
3  amend her Complaint to pursue claims for actual, punitive, and statutory damages, as
4  appropriate, against Defendant. However, as to this cause of action, at this time,
5  Plaintiffs seek only injunctive relief.

### FOURTH CLAIM FOR RELIEF
### Violation of California's Unfair Competition Law
### (Cal. Bus. & Prof. Code § 17200, et seq.)
### (On Behalf of Plaintiff Myers and the California Subclass)

9   93.   Plaintiff Myers hereby incorporates by reference the preceding
10 paragraphs.

11  94.   Defendant's conduct described herein violates the Unfair Competition
12 Law ("UCL"), codified at California Business and Professions Code section 17200, *et
13 seq*.

14  95.   The UCL prohibits, and provides civil remedies for, unfair competition.
15 Its purpose is to protect both consumers and competitors by promoting fair competition
16 in commercial markets for goods and services. In service of that purpose, the
17 Legislature framed the UCL's substantive provisions in broad, sweeping language.

18  96.   The UCL imposes strict liability. Plaintiff Myers need not prove that
19 Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent
20 business practices—but only that such practices occurred.

21  97.   A business act or practice is "unfair" under the UCL if it offends an
22 established public policy or is immoral, unethical, oppressive, unscrupulous, or
23 substantially injurious to consumers, and that unfairness is determined by weighing the
24 reasons, justifications, and motives of the practice against the gravity of the harm to
25 the alleged victims.

26  98.   A business act or practice is "fraudulent" under the UCL if it is likely to
27 deceive members of the public.

28

99.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

100.    Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting that the presence and nature of its Convenience Fees.

101.    Defendant's acts and practices offend an established public policy of truthful advertising in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

102.    The harm to Plaintiff Myers and the California Subclass outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

103.    Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*.

104.    Defendant's business practices have misled Plaintiff Myers and the proposed California Subclass and, unless enjoined, will continue to mislead them in the future.

105.    Plaintiff Myers relied on Defendant's misrepresentations in making her purchase.

106.    By falsely marketing its school lunch purchase practices and Plaintiff Myers' right to avoid fees under federal law, Defendant deceived Plaintiff Myers and California Subclass members into making purchases they otherwise would not make.

107.    As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff Myers and California Subclass members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff Myers and California Subclass members that

1  they will be deceived. Plaintiff Myers desire to conduct further business with

2  Defendant but cannot rely on Defendant's representations unless an injunction is

3  issued.

4      108.    As a result of its unfair, fraudulent, and unlawful conduct, Defendant has

5  been unjustly enriched and should be required to disgorge its unjust profits and make

6  restitution to Plaintiff Myers and California Subclass members pursuant to Cal. Bus. &

7  Prof. Code § 17203 and 17204.

8      109.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff

9  Myers and the members of the California Subclass, on behalf of the general public,

10 seek an order of this Court enjoining Defendant from continuing to engage, use, or

11 employ their unfair, unlawful, and fraudulent practices.

12     110.    Plaintiff Myers has no adequate remedy at law in part because

13 Defendant's conduct is continuing. Plaintiff Myers therefore seeks an injunction on

14 behalf of the general public to prevent Defendant from continuing to engage in the

15 deceptive and misleading practices described herein.

16

17

18

**FIFTH CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiff Myers and the California Subclass)**

19     111.    Plaintiff Myers hereby incorporates by reference the preceding paragraphs

20 if fully restated here.

21     112.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code

22 section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to

23 dispose of . . . personal property . . . to induce the public to enter into any obligation

24 relating thereto, to make or disseminate or cause to be made or disseminated . . . from

25 this state before the public in any state, in any newspaper or other publication, or any

26 advertising device, or by public outcry or proclamation, or in any other manner or

27 means whatever, including over the Internet, any statement . . . which is untrue or

28

20

CLASS ACTION COMPLAINT

1   misleading and which is known, or which by the exercise of reasonable care should be

2   known, to be untrue or misleading . . . ."

3       113.   Defendant's material misrepresentations and omissions alleged herein

4   violate Business and Professions Code section 17500.

5       114.   Defendant knew or should have known that its misrepresentations and

6   omissions were false, deceptive, and misleading.

7       115.   Pursuant to Business and Professions Code sections 17203 and 17500,

8   Plaintiff Myers and the members of the California subclass, on behalf of the general

9   public, seek an order of this Court enjoining Defendant from continuing to engage, use,

10  or employ their deceptive practices.

11      116.   Further, Plaintiff Myers requests an order awarding Plaintiff Myers and

12  California subclass members restitution of the money wrongfully acquired by

13  Defendant by means of said misrepresentations.

14      117.   Additionally, Plaintiff Myers and the California subclass members seek

15  an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code

16  section 1021.5.

17

18

19
                        **SIXTH CLAIM FOR RELIEF**
            **Violation of California's Consumer Legal Remedies Act ("CLRA")**
                      **(Cal. Civ. Code § 1750, *et seq.*)**
            **(On Behalf of Plaintiff Myers and the California Subclass)**

20      118.   Plaintiff Myers incorporates the preceding allegations by reference as if

21  fully set forth herein.

22      119.   Defendant violated and continues to violate the CLRA by engaging in the

23  following practices proscribed by California Civil Code § 1770(a) in transactions with

24  Plaintiff Myers and the Class which were intended to result in, and did result in, the

25  sale of school lunches:

26          a.   "Misrepresenting the affiliation, connection, or association with, or

27      certification by, another" (a)(3);

28

1          b.       "Representing that goods or services have . . . characteristics

2   . . . that they do not have" (a)(5);

3          c.       "Advertising goods or services with intent not to sell them as

4   advertised" (a)(9);

5          d.       "Representing that a transaction confers or involves rights,

6   remedies, or obligations that it does not have or involve, or that are prohibited

7   by law" (a)(14)

8          e.       "Advertising that a product is being offered at a specific price

9   plus a specific percentage of that price unless (A) the total price is set forth in

10  the advertisement, which may include, but is not limited to, shelf tags, displays,

11  and media advertising, in a size larger than any other price in that advertisement,

12  and (B) the specific price plus a specific percentage of that price represents a

13  markup from the seller's costs or from the wholesale price of the product"

14  (a)(20); and

15         f.       "Advertising, displaying, or offering a price for a good or

16  service that does not include all mandatory fees or charges" (a)(29).

17  120.   Specifically, Defendant advertises, displays, and offers to customers that

18  they will pay one price throughout the school lunch sign up process, but this is false

19  because Defendant applies an "Convenience Fees" at the very end of the registration

20  process, and fails to advise consumers that they have a federally protected right to not

21  pay such fees.

22  121.   At no time does Defendant disclose the true nature of its Convenience Fee;

23  instead, it repeatedly conceals and misrepresents this material information at several

24  steps of the transaction process.

25  122.   Pursuant to § 1782(a) of the CLRA, Plaintiff Myers' counsel notified

26  Defendant in writing by certified mail of the particular violations of §1770 of the CLRA

27  and demanded that it rectify the problems associated with the actions detailed above

28

1  and give notice to all affected consumers of Defendant's intent to act. If Defendant fails

2  to respond to Plaintiff Myers' letter or agree to rectify the problems associated with the

3  actions detailed above and give notice to all affected consumers within 30 days of the

4  date of written notice, as proscribed by §1782, Plaintiff Myers will move to amend his

5  Complaint to pursue claims for actual, punitive and statutory damages, as appropriate

6  against Defendant.  As to this cause of action, at this time, Plaintiff Myers seeks only

7  injunctive relief.

8  **FIFTH CLAIM FOR RELIEF**
**Violation of New Jersey's Consumer Fraud Act ("NJCFA")**

9  **(On behalf Plaintiff Santos and the New Jersey Subclass)**

10  123.  Plaintiff Santos repeats and re-alleges the above allegations as if fully set

11  forth herein.

12  124.  This count is brought pursuant to the New Jersey Consumer Fraud Act

13  ("NJCFA"), N.J.S.A. §§ 56:8-1 *et seq.*

14  125.  The NJCFA protects consumers from any "unconscionable commercial

15  practice, deception, fraud, false pretense, false promise, misrepresentation, or the

16  knowing, concealment, suppression, or omission, in connection with the sale or

17  advertisement of any merchandise…" N.J.S.A. § 56:8-2.

18  126.  Defendant's school lunch purchasing service constitutes "merchandise"

19  within the definition of the NJCFA. § 56:8-1(c).

20  127.  As described herein, Defendant violated the NJCFA by knowingly and

21  fraudulently deceiving consumers into paying unnecessary and unwanted Convenience

22  Fees.

23  128.  Defendant's assessment of Convenience Fees as described herein

24  constitutes an unconscionable commercial practice under the NJCFA.

25  129.  As a direct and proximate result of Defendant's deceptive and

26  unconscionable acts and practices, Plaintiff Santos and the New Jersey Subclass were

27  harmed and suffered ascertainable loss in that they were charged unnecessary

28

23

CLASS ACTION COMPLAINT

Convenience Fees without any meaningful choice to opt out. Accordingly, they have suffered and will continue to suffer actual damages.

130. Plaintiff Santos and the New Jersey Subclass are entitled to relief including, but not limited to, actual damages, injunctive relief, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the members of the Class seek an Order:

A.    Certifying the proposed Class pursuant to Rule 23;

B.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.    Declaring the Defendant has committed the violations of law alleged herein;

D.    Providing for any and all injunctive relief the Court deems appropriate;

E.    Awarding statutory damages in the maximum amount for which the law provides;

F.    Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G.    Providing for any and all equitable monetary relief the Court deems appropriate;

H.    Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I.    Awarding Plaintiff Myers their reasonable costs and expenses of suit, including attorneys' fees;

J.    Awarding pre- and post-judgment interest to the extent the law allows; and

///

24

CLASS ACTION COMPLAINT

K.      Providing such further relief as this Court may deem just and proper.

Dated: August 26, 2024                    Respectfully submitted,

                                          **KALIELGOLD PLLC**


                                   By:_/s/ Jeffrey D. Kaliel_
                                       Jeffrey D. Kaliel
                                       Sophia G. Gold
                                       Amanda J. Rosenberg

                                       *Attorneys for Plaintiffs and the Proposed Class*

25

CLASS ACTION COMPLAINT